NEW YORK TRUST COMPANY, TRUSTEE AND TRANSFEREE OF THE ESTATE OF LOUISE FARNAM WILSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

THE UNION & NEW HAVEN TRUST CO., TRUSTEE AND TRANSFEREE OF THE ESTATE OF LOUISE FARNAM WILSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 49660, 49661. Filed May 11, 1956.

*Grant N. Nickerson, Esq.*, for the petitioners.
*James R. McGowan, Esq.*, for the respondent.

OPINION.

RAUM, *Judge:* The Commissioner determined that each of the petitioners was liable as trustee and transferee of the property of the estate of Louise Farnam Wilson for a deficiency in estate tax in the amount of $13,522.87; he now concedes·that there is no deficiency, and it appears that there has been an overpayment. The sole question is whether we have jurisdiction to make a determination of overpayment in these proceedings.[1]

All of the facts have been stipulated. The decedent, an American citizen, had been domiciled in England until her death on January 21, 1949. Prior to 1934, she had lived in Connecticut. On September 17, 1949, her husband, Hugh Brian Wilson, a British subject, was appointed executor of her will in England. No executor or administrator has qualified or been appointed in the United States. Under the will, the decedent's husband became entitled to her property in England.

On September 4, 1931, the decedent created a trust, naming as trustee the Union & New Haven Trust Co., New Haven, Connecticut (referred to hereinafter as the New Haven Trust Co.). She reserved a right to revoke, alter, or modify the trust, as well as the right to the trust income during her life. The trust, as amended, was to terminate at her death. After the payment of certain specific gifts, the trust property was to be divided equally between her brother and sister. Although the trust originally provided in article THIRD for the payment from trust assets on her death "of any taxes imposed with respect to said trust fund or the transfer thereof," this provision was eliminated by an amendment to the trust dated October 28, 1935. The trust in-

---

[1] Section 912, Internal Revenue Code of 1939, provides:

> If the Board finds that there is no deficiency and further finds that the executor has made an overpayment of tax, the Board shall have jurisdiction to determine the amount of such overpayment, and such amount shall, when the decision of the Board has become final, be credited or refunded to the executor as provided in section 3770 (a). No such refund shall be made of any portion of the tax unless the Board determines as part of its decision that such portion was paid within three years before the filing of the claim or the mailing of the notice of deficiency, whichever is earlier, or that such portion was paid after the mailing of the notice of the deficiency.

Cognate provisions appear in section 6512, Internal Revenue Code of 1954.

strument stated in article ELEVENTH that it was "made with reference to and shall be governed by the laws of the State of Connecticut." The corpus of this trust was valued at $119,596.71 as of the date of the decedent's death.

On October 25, 1935, Louise Farnam Wilson created another trust, naming as trustee the New York Trust Company. She reserved the right to enjoy, or to direct who should enjoy, the trust income during her life. She also reserved the right to revoke the trust with the consent of any one of several named persons, as well as the power to appoint the corpus by will, with a provision that in default of any appointment, the corpus should be paid to Hugh Brian Wilson. She did not exercise her testamentary power of appointment; but during her life she did exercise her power of revocation, to the extent of withdrawing $110,000 in 1947. This trust made no directions concerning the payment of death or estate taxes on the property held in trust. It provided in article THIRTEENTH that "this indenture has been executed and delivered, and the property transferred thereunder delivered, in the State of New York and the grantor elects that it shall be construed and regulated by the laws of the State of New York, and that the validity and effect of the trust herein created and all questions arising hereunder shall be determined by the laws of the State of New York." The corpus of this trust was valued at $205,569.31 as of the date of the decedent's death.

Both trustees were represented by Wiggin & Dana, a law firm in New Haven, Connecticut, which undertook the task of preparing and filing an estate tax return pursuant to section 930, Internal Revenue Code of 1939,[2] on behalf of the two trustees. Wiggin & Dana encountered considerable difficulties and delays in obtaining sufficient information concerning the decedent's foreign assets and liabilities, as well as the amount of British death duty, for use in preparing the return.

By reason of such circumstances a 3-month extension from April 21, 1950, on behalf of both petitioners was obtained from the Commissioner within which the return might be filed. However, the Commissioner refused to grant an extension of the period for payment of the tax. One of the important facts needed by Wiggin & Dana in the preparation of the return was the amount of British death duty imposed, which would be available as a credit against the Federal estate tax. Based on an estimate of that item, the Federal tax was

[2] SEC. 930. "EXECUTOR," "NET ESTATE," "MONTH," "COLLECTOR."
When used in this subchapter—
(a) The term "executor" means the executor or administrator of the decedent, or, if there is no executor or administrator appointed, qualified, and acting within the United States, then any person in actual or constructive possession of any property of the decedent;

computed, and on April 21, 1950, the collector of internal revenue for the second district of New York received $17,835.92 from Wiggin & Dana on behalf of both petitioners in connection with the anticipated filing of the return. The collector executed a receipt to the "Est. of Louise Farnam Wilson, c/o Wiggin & Dana—Attys." This $17,835.92 was deposited in a suspense account by the collector pending the filing of a Federal estate tax return. Of the amount received by the collector from Wiggin & Dana, the New York Trust Company provided $13,198.58, and the New Haven Trust Co., $4,637.34.

On July 7, 1950, Wiggin & Dana forwarded a Federal estate tax return, executed on behalf of both petitioners to the collector of internal revenue for the second district of New York. This return, which was received by the collector on July 10, 1950, reflected an estate tax liability of $17,835.92. Wiggin & Dana had still not obtained the necessary information with respect to the British death duty. Indeed, even at the time of the revenue agent's examination of the return there was not yet available the required Certification of United Kingdom Estate Duty (Form 706f) with respect to the decedent's estate, and there was in fact no such Certification in existence prior to March 9, 1955, only 2 months before the hearing of these cases. Also, another fact affecting the amount of Federal estate tax liability was the filing of a Federal gift tax return in April 1953 disclosing gift tax liability in the amount of $9,553.86 with respect to inter vivos gifts made by the decedent to her husband in 1947 of property that was also includible in the gross estate.

Meanwhile, between July 10 and July 31, 1950, the collector had assessed estate taxes in the amount of $17,835.92, and applied against this assessment the same amount previously deposited in the suspense account. The collector's records reflect an assessment of $17,835.92 in the name of "Estate of Louise Farnam Wilson, J. Dwight Dana—Wiggin & Dana, Att'y."

The revenue agent completed his audit on April 20, 1953, as a result of which a deficiency was determined based on certain items no longer in dispute and based also upon the disallowance of the estimated credit for foreign death duties claimed in the amount of $6,300. Actually, as a result of the Certification which became available in 1955, it turned out that the estate was entitled to a considerably larger credit for foreign taxes than the estimate claimed on the return.

On May 5, 1953, the Commissioner issued separate notices to each of the petitioners, determining that each was liable as "trustee and transferee of property of the estate" of the decedent for a deficiency in estate tax in the amount of $13,522.87.

On July 15, 1953, each petitioner filed a separate petition with this Court. Between March 9, 1955, and April 20, 1955, Wiggin & Dana finally obtained the information from which a definitive computation of estate tax liability could be made. On the basis of such information, it appears that the total Federal estate tax due was $10,716.21, or $7,119.71 less than the amount reflected on the original estate tax return and paid in 1950.

On April 22, 1955, each petitioner filed with this Court an Amendment of Petition in which it added to its prayer for relief a request that this Court determine the amount of any overpayment of tax made by it. Neither of the petitioners has filed any claim for refund of any portion of the $17,835.92 paid in connection with the filing of the estate tax return. Whether we have any power to enter an order of overpayment in these circumstances is the only question before us for determination.

Respondent argues that each petitioner appears in this controversy in a dual role, first, as an "executor" under section 930 which filed an estate tax return, and, second, as a transferee; that these proceedings are against each petitioner as a transferee; and that the Court has no authority under section 912 in transferee proceedings to find an overpayment with respect to payments made by an executor. The contention is superficially plausible, but, on reflection, we think that it does not apply to the unusual situation before us.

We quite agree with the Government that in transferee proceedings the Court has no power to determine who is entitled to any overpayment of tax made by the transferor. Such was the explicit holding of *John A. Snively, Sr.*, 20 T. C. 136, 150–151. The liabilities of taxpayers and transferees are separate and distinct. Cf. *Edward Michael*, 22 B. T. A. 639, affirmed 75 F. 2d 966 (C. A. 2), certiorari denied 296 U. S. 579; *Milk Bottle Exchange, Inc.*, 43 B. T. A. 33; *Continental Oil Co.* v. *Helvering*, 100 F. 2d 101, 110 (C. A., D. C.). And the mere fact that the same person may appear in different capacities, as, for example, an executor and a legatee, does not call for a different result. Cf. *Hulbert* v. *Commissioner*, 296 U. S. 300, 305–308.

Accordingly, if each of these petitioners were actually an executor and had filed an estate tax return as such, the fact that it is also fortuitously a transferee would not make the general rule inapplicable, and in transferee proceedings against it we would fully agree with the respondent that it would not be entitled to have this Court determine an overpayment which it had made as executor. But the difficulty here is that by reason of the unique situation growing out of section 930, each petitioner does not really have two different capacities.

Neither petitioner was in fact an executor. Each was merely in possession of property that formerly belonged to the decedent and was therefore actually only a transferee; but section 930 artificially described it as an "executor" and imposed upon it the duty of filing a return. Cf. *Estate of Henry Wilson*, 2 T. C. 1059, 1084. Yet it was in no true sense an executor; nor was its return that of a genuine executor; plainly, its liability in respect of the return was limited to the transferred assets in its hands, and was in truth merely the liability of a transferee although the statute provided the machinery for filing a return and imposed a duty in respect of payment. Its obligation and liability were based solely upon being a transferee of the decedent's property, notwithstanding that the fictional label of "executor" was for convenience applied to it by section 930. Accordingly, when the Commissioner sent his deficiency notices to the petitioners as "transferees" he was in reality sending the notices to them in the same capacity that they had when they filed the return. We think that each petitioner in fact plays but a single and not a dual role. For purposes of the statute each is described as an "executor," and, as such, is entitled to a determination of overpayment under section 912.

The situation is unique, and a contrary conclusion would produce a harsh result. Of course, if such result were required by the statute, that would be the end of the matter. But we think that such result is not required and that we should not reach out for attenuated subtleties to arrive at an inequitable decision. The blunt fact is that there was but a single reason why each petitioner caused the return to be filed on its behalf and why the transferee proceedings were brought against each of them, namely, that each was a transferee of the decedent's assets. We think that, notwithstanding the apparent difference in labels, each petitioner in fact appears in but a single capacity. In the circumstances, we hold that the general rule precluding the determination of an overpayment in transferee proceedings which had been made by the taxpayer or a transferor has no application here.

The Government also raises an issue that the petitioners have not shown how much of the overpayment is due to each of them. However, a formula for an allocation is readily available based upon the respective payments made by each, and we will not assume that the parties will be unable to agree under Rule 50 as to the amount of the overpayment to be attributed to each petitioner.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

TURNER and HARRON, *JJ.*, concur in the result.