Sol Jacobs, Jr., Transferee, Petitioner, *v.* Commissioner of Internal Revenue, Respondent

Docket No. 3475-63. Filed October 28, 1965.

Sol Jacobs, Jr., pro se.
*James D. Burroughs*, for the respondent.

Tannenwald, *Judge:* Respondent determined a deficiency in petitioner's income tax as transferee of Credit, Inc., for the period of August 1, 1959, to February 9, 1960, in the amount of $2,375.12. Petitioner has conceded liability as transferee for any deficiency determined herein against Credit, Inc., and has further conceded liability of Credit, Inc., for so much of the deficiency as is not related to the issue involved herein. That issue is the deductibility by Credit, Inc., in its final return of the commuted value of the unpaid balance of a liability to a retired employee.

FINDINGS OF FACT

This is a fully stipulated case. The stipulation of facts and the exhibits thereto are incorporated herein by reference.

Credit, Inc. (sometimes hereinafter referred to as the transferor), prepared and filed its Federal income tax returns under the accrual method of accounting using a fiscal year ending July 31. During the period involved herein, petitioner and Alene J. Davidson (hereinafter referred to as Alene) were the transferor's sole shareholders.

Prior to April 3, 1959, Ada J. Thiot (hereinafter referred to as Ada) was employed by the transferor. On that date Ada retired and she and Credit, Inc., entered into an agreement whereby, as "additional compensation for her past services and to provide for her comfortable retirement," Credit, Inc., agreed to pay to her $100 per month until her death, or until the aggregate sum of $10,000 had been paid to her. The transferor had no retirement plan for its employees generally.

During the fiscal year ended July 31, 1959, Credit, Inc., made three payments of $100 each to Ada and it made seven payments of $100 each to her during the period August 1, 1959, through February 9, 1960.

On February 9, 1960, the transferor was liquidated, its assets were distributed to its shareholders, and they assumed all of its liabilities, including the liability to Ada.

In its final Federal income tax return covering the period August 1, 1959, to February 9, 1960, Credit, Inc., claimed a "pension deduction" of $8,617.07, explaining the deduction as follows:

Provision for pension of former employee of many years service to be paid at rate of $100.00 per month as per contractual arrangement:

| | | |
|---|---:|---:|
| Original contract | $10,000.00 | |
| Paid in prior fiscal year | 300.00 | |
| Balance Aug. 1, 1959 | 9,700.00 | |
| Paid during the period Aug. 1, 1959 through Feb. 9, 1960 | | $700.00 |
| Balance funded at date of liquidation in agency account to be administered by the First National Bank of Tampa | 9,000.00 | |
| Reduction to reflect present value | 1,082.93 | 7,917.07 |
| Pension deduction claimed | | 8,617.07 |

Petitioner and Alene paid $400 to Ada during the period February 9 to June 17, 1960.

On June 17, 1960, petitioner and Alene deposited $8,600 in the First National Bank of Tampa (hereinafter called bank) with instructions for the payment of $100 per month to Ada until exhaustion of the funds on deposit or until her death. Any amounts remaining after satisfaction of the obligation were to be returned to petitioner and Alene or their respective estates. The account was designated an "agency account." It could be terminated at any time upon the joint instructions of petitioner and Alene and it would also terminate on the death of either petitioner or Alene; however, they agreed in writing on June 18, 1960, that the survivor would continue the payments on the terms stated in the agreement with the bank.

In his notice of deficiency respondent conceded that $7,917.07 represented the commuted value of the $8,617.07 obligation, but disallowed the deduction of that item by Credit, Inc., on its final return.

### OPINION

The issue involved herein is whether Credit, Inc., can deduct in the year of its liquidation the commuted value of its unpaid liability to Ada for her past services. Petitioner argues that since Credit, Inc., was on the accrual method of accounting the amount in question was deductible on its final tax return. Respondent answers that, under the

circumstances involved herein, section 404 [1] requires actual payment as a prerequisite to the deduction.

We note first that the arrangement involved herein was one deferring the receipt of compensation. The payments to Ada were described as additional compensation for past services and were intended as a pension to provide for her retirement. As such, the arrangement herein clearly falls within the ambit of section 404(a)(5). Compare *Champion Spark Plug Co.*, 30 T.C. 295 (1958), affirmed per curiam 266 F. 2d 347 (C.A. 6, 1959). That section excises such arrangements from the normal rules of tax accounting, regardless of whether the taxpayer is on a cash, accrual, or other method of accounting. See *New York Post Corporation*, 40 T.C. 882, 887 (1963). A deduction is allowable only in the year of payment and then only if the employee's rights are nonforfeitable. We therefore hold that the commuted value of the unpaid balance of the obligation was not deductible by Credit, Inc., in its final taxable year. *New York Post Corporation, supra;* cf. *F. & D. Rentals, Inc.*, 44 T.C. 335 (1965), on appeal (C.A. 7, 1965).

Even if the distribution of assets in liquidation to petitioner and Alene could be deemed, to the extent of the corporation's obligation to Ada, to have been impressed with a "trust" in favor of Ada, there is no evidence that such a "trust" met the requirements for a qualified pension plan under section 401(a). Similarly, even if petitioner and Alene were deemed to have established the agency account on behalf of Credit, Inc.,[2] there is no evidence that this arrangement met the requirements of a qualified plan under section 401(a); it should be noted that the agency account covered only Ada, and her rights in the

---

[1] I.R.C. 1954:

SEC. 404. DEDUCTION FOR CONTRIBUTIONS OF AN EMPLOYER TO AN EMPLOYEES' TRUST OR ANNUITY PLAN AND COMPENSATION UNDER A DEFERRED-PAYMENT PLAN.

(a) GENERAL RULE.—If contributions are paid by an employer to or under a stock bonus, pension, profit-sharing, or annuity plan, or if compensation is paid or accrued on account of any employee under a plan deferring the receipt of such compensation, such contributions or compensation shall not be deductible under section 162 (relating to trade or business expenses) or section 212 (relating to expenses for the production of income) ; but, if they satisfy the conditions of either of such sections, they shall be deductible under this section, subject, however, to the following limitations as to the amounts deductible in any year:

    (1) PENSION TRUSTS.— * * *

    (2) EMPLOYEES' ANNUITIES.— * * *

    (3) STOCK BONUS AND PROFIT-SHARING TRUSTS.— * * *

    *      *      *      *      *      *      *

    (5) OTHER PLANS.—In the taxable year when paid, if the plan is not one included in paragraph (1), (2), or (3), if the employees' rights to or derived from such employer's contribution or such compensation are nonforfeitable at the time the contribution or compensation is paid.

[2] By the same token, even if we found that the payment of $400 to Ada by petitioner and Alene during the period Feb. 9 to June 17, 1960, were made on behalf of Credit, Inc., the latter would not be entitled to any deduction. By the time these payments were made, Credit, Inc., no longer existed for tax purposes and in any event the payments took place in a taxable year not before us.

account were forfeitable either by death or through revocation by petitioner and Alene. *William M. Bailey Co.*, 15 T.C. 468 (1950), affirmed per curiam 192 F. 2d 574 (C.A. 3, 1951) ; *Times Publishing Co.*, 13 T.C. 329 (1949), affirmed per curiam 184 F. 2d 376 (C.A. 3, 1950) ; sec. 1.404(a)–12, Income Tax Regs. Consequently, the provisions of section 404(a)(6), relating to the deductibility of contributions to qualified plans after the close of the taxable year, are inapplicable.

Having decided that section 404 precludes a deduction, we need not reach the question as to whether, under the normal rules for accrual and absent the applicability of section 404, Credit, Inc., would have been entitled to a deduction. We note that the agreement providing for the payments to Ada was executed on April 3, 1959, a date within the prior taxable year of Credit, Inc. It is open to question whether the liability properly accrued in that year; the amount of the obligation to Ada was not fixed in view of the fact that payments were to be made only so long as she lived.[3] Compare *Denver & Rio Grande Western Railroad Co.*, 38 T.C. 557 (1962), with *Texaco-Cities Service Pipe Line Co.* v. *United States*, 145 Ct. Cl. 274, 170 F. Supp. 644 (1959) ; see *Chrysler Corporation*, 33 T.C. 843, 860 (1960), affirmed per curiam 289 F. 2d 643 (C.A. 6, 1961), certiorari denied 368 U.S. 876. Similarly, it is open to question whether the obligation met the normal test of accrual in the following year unless the additional link, supplied by the liquidation of Credit, Inc., and its consequent passing out of existence, would resolve the question in favor of deductibility. Compare *Central Cuba Sugar Co.* v. *Commissioner*, 198 F. 2d 214 (C.A. 2, 1952), modifying 16 T.C. 882 (1951), certiorari denied 344 U.S. 874, with *Brainard Steel Corporation* v. *United States*, 137 Ct. Cl. 114, 146 F. Supp. 461 (1956).[4]

Petitioner argues in the alternative that if Credit, Inc., is denied the deduction in its final taxable period he should be allowed a deduction for (a) amounts actually paid by him to Ada and (b) his prorata share of amounts paid by the bank to her. However, no deficiency notice has been issued to petitioner as an individual and we are without jurisdiction to redetermine his individual tax liability. *Estate of*

---

[3] Even if there was a proper accrual within the prior taxable year of Credit, Inc., that year is not before us and we therefore have no jurisdiction. *Commissioner* v. *Gooch Co.*, 320 U.S. 418 (1943).

[4] There would not seem to be complete consistency in the use of normal rules for accrual to deny to a liquidating entity which earned income produced by services a deduction for a liability to make payment for such services while requiring, under the same circumstances, inclusion in the income (1) of a cash basis taxpayer, amounts earned but uncollected, *Susan J. Carter*, 9 T.C. 364 (1947), affirmed on another issue 170 F. 2d 911 (C.A. 2, 1948) ; (2) of an accrual basis taxpayer, amounts as to which the normal test of accruability had not been met, *J. Ungar, Inc.*, 26 T.C. 331 (1956), affd. 244 F. 2d 90 (C.A. 2, 1957) ; and (3) of a completed-contract-method taxpayer, amounts which would have been includable in the corporation's income had it been on the percentage-of-completion method of accounting, *Jud Plumbing & Heating, Inc.*, 5 T.C. 127 (1945), affd. 153 F. 2d 681 (C.A. 5, 1946) ; see *Susan J. Carter, supra* at 374.

*Samuel Stein*, 40 T.C. 275, 277 (1963); *J. V. Vandenberge*, 3 T.C. 321 (1944), affd. 147 F. 2d 167 (C.A. 5, 1945), certiorari denied 325 U.S. 875; *Edward Michael*, 22 B.T.A. 639 (1931), affd. 75 F. 2d 966 (C.A. 2, 1935), certiorari denied 296 U.S. 579; cf. *New York Trust Co.*, 26 T.C. 257 (1956); *Milk Bottle Exchange, Inc.*, 43 B.T.A. 33 (1940). Therefore, we do not reach petitioner's alternative argument nor do we consider the extent to which the obligation of Credit, Inc., to Ada affected the tax consequences of the liquidation of Credit, Inc., to petitioner or Alene as individuals. Cf. *Arrowsmith* v. *Commissioner*, 344 U.S. 6 (1952); secs. 1311–1314.

*Decision will be entered for the respondent.*