## McCALLUM v. UNITED STATES.
## No. 43536.

Court of Claims.
April 3, 1939.

Frank J. Albus, of Washington, D. C. (Smith, Moore & Lucas, of Washington, D. C., on the briefs), for plaintiff.

Guy Patten, of Washington, D. C., and James W. Morris, Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

GREEN, Judge.

Alexander McCallum, a resident of the State of Massachusetts, died October 3, 1919, and the plaintiff is the duly qualified executor of his estate. On September 20, 1920, plaintiff filed a Federal estate tax return on behalf of the estate of the decedent showing in detail the amount of Federal estate tax. The amount of tax so found to be due was paid by the plaintiff on October 20, 1920.

Included in the tax return and reported among the assets of the estate were 100 shares of First National Fire Insurance Company stock, the value of which at decedent's death was reported as nothing. The tax return was examined by a revenue agent who, in a report dated June 15, 1922, recommended certain adjustments which resulted in a deficiency in tax of $87,666.-34 but no change was made with respect to the value of the 100 shares of stock as reported. The revenue agent conferred with the plaintiff in regard to the changes recommended and no objection was made by plaintiff thereto. The Commissioner of Internal Revenue adopted the report of the revenue agent fixing the tax liability and deficiency in tax. This deficiency was paid by plaintiff on October 27, 1922.

The 100 shares of stock above referred to were sold by plaintiff on February 11, 1924, for $325, and June 4, 1932, the plaintiff wrote the collector of internal revenue reporting the sale thereof and enclosed a check for $39 stating that the same was "in payment of the Federal Estate Tax on the above amount, $325.00." The payment was voluntarily made by the plaintiff for the purpose of attempting to extend the time for filing a claim for refund.

On December 14, 1934, plaintiff filed a claim in which he asked for the refund of $17,546.52 on the ground that he was entitled to additional deductions aggregating $162,313.66, consisting of a judgment paid by him in 1929 in a suit pending against the decedent at the time of his death, expenses in connection therewith, miscellaneous administration expenses, and Federal and State income taxes paid by plaintiff on income of the decedent prior to his death. None of the items or matters set forth in the claim was included in the estate tax return, nor had they ever been called to the attention of the Commissioner of Internal Revenue, or asserted or claimed by plaintiff prior to the filing of the claim on December 14, 1934.

On March 30, 1935, the Commissioner of Internal Revenue issued a certificate of overassessment to plaintiff in the amount of $39, representing the above mentioned payment, and refunded same to plaintiff, stating in said certificate that "This certificate of overassessment is issued in view of Section 607 of the Revenue Act of 1928." In issuing the certificate of overassessment, the Commissioner of Internal Revenue did not go into the merits of the case or otherwise determine, or redetermine, the tax liability.

On June 14, 1935, the Commissioner of Internal Revenue formally rejected the claim for refund filed December 14, 1934, and on March 30, 1937, the plaintiff began this suit thereon.

It will be observed that the payment upon which the suit is based was entirely voluntary, that it was made after the expiration of the time for filing a claim for refund and at a time when a suit for the recovery of any portion of the estate taxes theretofore paid would have been barred, and also at a time when the Commissioner of Internal Revenue was barred from assessing additional estate taxes. The issue in the case is whether a payment so made, under the facts stated above, can nullify the bar of the statute which had been in existence for a number of years and extend the period within which a claim for refund may be filed. Counsel for plaintiff call attention to the previous decisions of this court in which it was held that the statutory period for refunding estate taxes wrongfully collected was to be determined from the time when the whole of the tax was paid, and that the recovery upon the refund was not confined to the portion of the tax paid within the period of limitations. These cases and similar cases upon which other courts have passed involve an altogether different question than is now before us and were based upon altogether different facts. In all of these cases the claims sued upon were timely filed after the payment of taxes which had been timely assessed by the Commissioner of Internal Revenue upon audit of the estate tax returns and these facts were necessary to support the decisions which were made in favor of the taxpayers. In the case before

us, the payment upon which plaintiff bases its case was made after plaintiff's tax had not only been fully settled and agreed upon but after the statute of limitations had run against both parties as to instituting further proceedings in the matter. The payment was made in an attempt to extend the time for filing a claim for refund. If the contention of the plaintiff should be sustained, then, after the statute went into effect, it could be nullified and a new period of limitations created by the voluntary act of the taxpayer. Nor would it matter how long a period had transpired since the limitation went into force, which in the instant case was many years.

 When a question arises as to the proper construction of a statute in respect to a matter with reference to which the law is not specific, the rule is that the courts should consider what the intention of the legislative body was in enacting the statute and also whether the construction necessary to sustain the cause of action would be a reasonable one.

It is too plain to need either discussion or argument to show that the construction which plaintiff seeks to apply to the statute was not intended by Congress. Congress never intended to authorize the taxpayer for an indefinite period after the statute of limitations had otherwise expired, to extend the time during which he might file a claim for refund by making an additional payment of taxes for which at the time of payment he was not liable. Under such a construction the taxpayer's right to reopen the case would never be ended. Its practical effect would be to permit the taxpayer to abrogate the statute of limitations whenever he chose to make an additional payment after his case had been completely closed. To say that such a situation would be unreasonable is, we think, to put it mildly. It would be grossly unfair to the Government.

The Commissioner issued a certificate of overassessment to plaintiff for the $39 paid on June 4, 1932, and refunded the same to the plaintiff "in view of Section 607 of the Revenue Act of 1928" without going into the merits of the case or making any determination as to tax liability. This, we think, is immaterial as the Commissioner had no power to waive the statute of limitations. United States v. Garbutt Oil Co., 302 U.S. 528, 58 S.Ct. 320, 82 L.Ed. 405.

"The tax" and the whole tax was paid and completely settled in 1922 and the parties had so agreed. No further assessments or claims were presented by the Government and none could be collected by the Government after the period of limitations had expired. Nothing more was due from the taxpayer, consequently the taxpayer had not only paid "the tax" but all the tax and the whole of his tax. There was nothing more to be paid thereon and the plaintiff could not extend the time of recovery of any taxes alleged to have been theretofore wrongfully paid by voluntarily presenting to the Government a further sum as additional taxes upon an item which in the original settlement had been determined to be not taxable.

The plaintiff's petition must be dismissed and it is so ordered.