**BRAINARD STEEL CORPORATION**
**v.**
**The UNITED STATES.**
No. 467–2.

United States Court of Claims.
Dec. 5, 1956.

---

1. See Oneida Navigation Corporation v. W. & S. Job & Co., Inc., 252 U.S. 521, 40 S.Ct. 357, 64 L.Ed. 697.

Thomas J. McManus, Pittsburgh, Pa., for plaintiff. Carl E. Glock, Jr., and Reed, Smith, Shaw & McClay, Pittsburgh, Pa., were on the brief.

H. Eugene Heine, Jr., Philadelphia, Pa., with whom was Asst. Atty. Gen., Charles K. Rice, for defendant. Andrew D. Sharpe, Washington, D. C., was on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

JONES, Chief Judge.

The plaintiff steel corporation sues to recover $22,276.29, plus interest, representing Federal excess profits and income taxes allegedly overpaid for the calendar years 1944, 1945 and 1946. The

issue is whether the plaintiff should be allowed to recompute its taxes for 1944, 1945 and 1946, because of the payment in 1948 by its successor, Sharon Steel Corporation, of certain wage adjustments to employees for work they performed for plaintiff in 1944, 1945 and 1946. In 1947 Sharon assumed plaintiff's liabilities and the plaintiff corporation was dissolved.

Before its dissolution on January 28, 1947, plaintiff was an Ohio corporation engaged as a basic steel company in the manufacture of cold rolled strip steel. At all times material to this action, plaintiff kept its books and filed its Federal income and excess profits tax returns on the accrual method of accounting and on a calendar year basis. The returns were filed with the Collector of Internal Revenue for the 18th Collection District of Ohio, at Cleveland, Ohio.

For the calendar years 1944 and 1945 plaintiff filed timely excess profits tax returns, and for the calendar year 1946 it filed a timely net income tax return. Plaintiff paid substantial taxes for each of these years, and its successor, Sharon, paid certain deficiencies which were subsequently assessed by the Bureau of Internal Revenue for each of the years. Plaintiff claims that the taxes paid were in excess of the amount legally due the defendant under the Internal Revenue Code of 1939 because of subsequent wage adjustments which will be discussed hereinafter.

In 1942 plaintiff entered into an agreement with United Steelworkers of America (hereinafter referred to as the Union) relating to recognition, wages, hours, vacations, grievances, and other matters.

In 1944 proceedings were held before the National War Labor Board which dealt with numerous demands by the Union upon members of the basic steel company group. As a member of this group plaintiff was a party to the proceedings. One of the Union demands which the Board considered was a solution to the problem of adjusting inequitable intraplant wage rate relationships in the industry where they existed. By its directive of November 25, 1944, the Board disposed of the various issues under consideration. Article X, paragraph 3, of the directive which dealt with wage rate inequities ordered the individual companies and the Union to negotiate the elimination of any existing intraplant wage rate inequities in accordance with specified steps, guideposts, and procedure. The directive was general in nature and did not designate the individual plants in which wage rate inequities existed.

Following the directive, the Union and the plaintiff, by written contract dated May 15, 1945, agreed upon the terms of employment to govern the operation of the plaintiff. The agreement provided, *inter alia*, that "Wage rate inequities are to be adjusted according to the provisions of Section 7 of this agreement, using such steps guide-posts, and procedure, as have been established by the War Labor Board directive November 25, 1944, during such time as this directive remains in force." Section 7 dealt with the adjustment of grievances and provided that differences arising between the plaintiff and the Union should be negotiated and arbitrated before any strike was called or work was suspended. Neither the directive of November 25, 1944, nor the contract of May 15, 1945, contained any specific information as to actual wage rate inequities existing in plaintiff's plant.

In September 1946, when Sharon and plaintiff were considering the possibility of Sharon's acquiring plaintiff's assets and assuming its liabilities, Sharon pointed out that plaintiff might be liable for wage rate inequities under the directive of November 25, 1944. Thereupon plaintiff accrued on its books the sum of $19,582.14 to cover possible claims for wage rate inequities arising out of labor performed by its employees during the years 1944, 1945 and 1946. This figure was arrived at by plaintiff as the possible net amount which might have to be paid after taking into consid-

eration the tax reduction to which plaintiff might have been entitled as the result of payment by it of the possible claims. On or before December 31, 1946, accountants prepared an adjusting entry to accrue the gross amount of the possible claims. As a result of this adjusting entry, the sum of $60,501.54 appeared as a liability for wage rate inequities on plaintiff's financial statement of December 31, 1946.

Plaintiff and Sharon entered into a written Agreement and Plan of Reorganization dated November 15, 1946, pursuant to which plaintiff, on December 31, 1946, transferred to Sharon all of its assets in exchange for certain common stock of Sharon and the assumption by Sharon of all of plaintiff's liabilities. Included in the liabilities assumed by Sharon was the $60,501.54 which had been accrued by plaintiff to cover possible claims arising from wage rate inequities.

Plaintiff was dissolved on January 28, 1947, and properties previously owned by it were operated by Sharon during the calendar year 1947 as Brainard Steel Division, Sharon Steel Corporation.

On May 21, 1947, Brainard Steel Division executed an agreement with the Union dealing with wages, job classifications, wage rate inequities, and other matters. This agreement provided, *inter alia*, that "Upon the execution of a contract between the Union and the Company covering job classifications, no basis shall exist for an employee, whether paid on an incentive or non-incentive basis, to allege that a wage rate inequity exists and no grievance on behalf of an employee alleging a wage rate inequity shall be filed or processed during the remainder of the term of this agreement." A supplemental agreement was executed on December 8, 1947, establishing wage rates for various job classifications, and a manual for job classification of production and maintenance jobs became effective on January 5, 1948.

On December 13, 1947, Brainard Steel Company was organized as a wholly-owned subsidiary of Sharon under the laws of Ohio. Pursuant to a reorganization agreement dated December 19, 1947, between Sharon and Brainard Steel Company, the latter acquired certain assets of Sharon which had previously been devoted to the business of Sharon's Brainard Steel Division in exchange for a number of shares of capital stock of Brainard Steel Company and the assumption by Brainard Steel Company of certain liabilities of Sharon. The reorganization agreement did not specifically transfer Sharon's liability for possible wage inequity payments to Brainard Steel Company.

On February 12, 1948, Brainard Steel Company executed an intraplant wage rate inequities agreement with the Union which established procedures for computing and disbursing to eligible employees and former employees retroactive compensation for work performed from January 4, 1944, to January 4, 1948.

As a result of the National War Labor Board's directive of November 25, 1944, and the written agreements between Brainard Steel Division of Sharon and the Union in 1947 and Brainard Steel Company and the Union in 1948, wage rate inequities were adjusted, and payments were made by Sharon in 1948 to plaintiff's employees for retroactive compensation and adjustment of wage rate inequities for the years 1944, 1945 and 1946. The amounts paid were as follows:

For the year 1944.......... $12,434.76
For the year 1945.......... 11,236.50
For the year 1946.......... 9,353.39

Plaintiff did not claim a deduction for the additional compensation paid to its employees for wage rate inequities in its tax returns for the years 1944 and 1945. It did claim a deduction for wage rate inequities for 1946 in the amount of $16,678.29 in anticipation of possible future payments. This deduction was disallowed by the revenue agent who audited plaintiff's income tax return for 1946.

For each of the years 1944, 1945 and 1946, plaintiff filed a timely claim for refund with the Collector of Internal Revenue for the purpose of recovering the overpayment of taxes which it alleges were made during those years. Each claim was rejected by the Commissioner of Internal Revenue and plaintiff now sues in this court to recover the alleged overpayments.

Plaintiff takes the position that under section 43 of the Internal Revenue Code of 1939, 26 U.S.C. § 43 (1952 Ed.), it is entitled to deduct in recomputing its taxes for 1944, 1945 and 1946 the wage adjustments paid by Sharon in 1948 to plaintiff's employees for work performed by them during those three years. Section 43 reads as follows:

"The deductions and credits * * provided for in this chapter shall be taken for the taxable year in which 'paid or accrued' or 'paid or incurred', dependent upon the method of accounting upon the basis of which the net income is computed, unless in order to clearly reflect the income the deductions or credits should be taken as of a different period. * * * *"

Plaintiff argues that since payments made by Sharon in 1948 were properly accruable in 1944, 1945 and 1946 it is entitled to a deduction for each of those years.

■ The cases are uniform in holding that in order for a taxpayer to accrue an expense for any given year, the taxpayer's liability must be fixed and not contingent. Security Flour Mills Co. v. Commissioner, 321 U.S. 281, 64 S.Ct. 596, 88 L.Ed. 725; Dixie Pine Products Co. v. Commissioner, 320 U.S. 516, 64 S. Ct. 364, 88 L.Ed. 420; United States v. Anderson, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347; Breeze Corporations, Inc., v. United States, 117 F.Supp. 404, 127 Ct. Cl. 261; Hershey Creamery Company v. United States, 101 F.Supp. 877, 122 Ct. Cl. 423. It is also well settled that if the liability is definitely fixed, the mere fact that the exact amount of liability is

not known will not prevent the taxpayer from taking a deduction so long as a basis exists upon which the amount of the liability may be estimated within reasonable limits. Canton Cotton Mills v. United States, 94 F.Supp. 561, 119 Ct. Cl. 24; Hershey Creamery Company v. United States, supra.

Applying these principles to the instant case, it is apparent that in order for the plaintiff to prevail it must first establish that its liability for wage rate inequities was definitely fixed during the years 1944, 1945 and/or 1946. This it has failed to do.

■ Plaintiff urges that its liability was established by the National War Labor Board's directive of November 25, 1944, which recognized the existence of wage rate inequities within the basic steel company group of which plaintiff was a member. However, a careful examination of this directive reveals that it fixed no definite liability on plaintiff. It merely ordered management and labor to negotiate the elimination of intraplant wage rate inequities where they existed and set forth certain steps, guideposts, and procedure to be followed in the negotiations. It did not specifically state that inequities in fact existed within plaintiff's plant or that plaintiff was definitely liable for anything. In view of the general language of the directive which extended to a large group of companies in the basic steel group, we cannot accept the view that it definitely fixed any liability on the plaintiff. A mere order to negotiate such as the one before the court does not have the effect of fixing liability on one of the parties unless the order specifically states that liability exists.

■ The contract of May 15, 1945, between the plaintiff and the Union provided that wage rate inequities would be adjusted and that differences between the plaintiff and the Union would be negotiated and arbitrated before any strike was called or work stopped. In this contract plaintiff did not agree to pay employees for back wages. It merely

agreed to make some type of adjustment for wage rate inequities and to bargain with the Union if disagreements arose. We find nothing in the contract which fixed a definite liability on the plaintiff.

One other factor remains to be considered in determining whether plaintiff's liability was fixed or merely contingent during the years involved. In September of 1946 Sharon called to plaintiff's attention the fact that plaintiff *might* be liable for wage rate inequities under the War Labor Board's directive of November 25, 1944. Plaintiff then accrued on its books an amount to cover *possible* claims for wage rate inequities for 1944, 1945 and 1946. It thus appears likely that at the time these entries were made on plaintiff's books plaintiff's officers were of the opinion that some financial settlement for wage rate inequities would eventually be made. However, until it was finally determined that wage rate inequities actually existed in plaintiff's plant and that plaintiff was liable for such inequities, no fixed liability existed. No such determination was made in any of the three years involved herein, and we must conclude that plaintiff's liability was not fixed during those years. In view of this conclusion it is unnecessary to determine whether the amount of plaintiff's possible liability could have been estimated within reasonable limits during 1944, 1945 and 1946.

We have given careful consideration to plaintiff's other contentions and find them to be without merit.

It is with some reluctance that the court arrives at the result in the present case. It is no doubt true that the plaintiff bore at least part of the burden of the adjustments for wage rate inequities paid by its successor in 1948. When Sharon acquired plaintiff's assets and liabilities in 1947, plaintiff had accrued an amount on its books to cover possible claims for wage rate inequities.

Sharon assumed this contingent liability. Assuming that plaintiff and Sharon were dealing at arms length, plaintiff no doubt received less common stock than it would have received if the contingent liability had not existed. If this is true then plaintiff suffered a financial loss which was due, at least indirectly, to the wage rate inequities which were eventually found to exist.

Normally a taxpayer on the accrual basis who is prevented from taking a deduction in a given year because his liability has not become fixed will subsequently take the deduction for the year in which the liability does become fixed. However, in the present case the plaintiff was no longer in business when the liability for wage rate inequities became fixed. Thus, although the plaintiff suffered a financial loss arising out of these wage rate inequities, it was never permitted to take a deduction for the loss. This is an unfortunate and, as far as we have been able to find, a unique situation.

We feel that in fairness the plaintiff should be entitled to some sort of adjustment. However, the law is settled beyond doubt that in order to take a deduction for a loss during any given year, the taxpayer on the accrual basis must have a fixed liability. It is not the province of the court to rewrite the law to correct any apparent inequities in an individual case. In doing so it might create inequities in other cases. Its function is to interpret the law as written. Since in the present case the plaintiff had no fixed liability during the years 1944 through 1946 it is not entitled to a deduction for any of those years and can not recover in the present action. Plaintiff's petition will be dismissed.

It is so ordered.

LARAMORE, MADDEN, WHITAKER and LITTLETON, Judges, concur.