**KINGSTON PRODUCTS CORPORATION**

v.

**The UNITED STATES.**

No. 334–62.

United States Court of Claims.

Nov. 10, 1966.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

## OPINION

PER CURIAM.

This case was referred to Trial Commissioner Herbert N. Maletz with directions to make findings of fact and recommendation for conclusions of law. The commissioner has done so in an opinion and report filed on October 7, 1965. No exceptions were filed to the findings of fact in the commissioner's report, such facts having been stipulated by the parties. However, plaintiff filed exceptions to the trial commissioner's recommendation for conclusions of law. Defendant has requested that the court adopt both the findings of fact and the recommended conclusions of law. The case was submitted to the court on oral argument of counsel and the briefs of the parties. Since the court is in agreement with the trial commissioner's findings, opinion and recommended conclusions of law, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case. Plaintiff is therefore entitled to recover for income tax overpayment for the year 1953 and judgment is entered to that effect with the amount of recovery to be determined pursuant to Rule 47(c) and the stipulation of the parties. Plaintiff is not entitled to recover on the remaining claim as to which the petition is dismissed.

OPINION OF COMMISSIONER *

MALETZ, *Commissioner*: This is a suit to recover $30,249.16 for claimed overpayments on income and excess profits tax for the year ending December 31, 1953. The case presents the following issues: (1) whether plaintiff's two refund claims for that year (the first for an alleged income tax overpayment; the second for an alleged excess profits tax overpayment) were timely filed; and (2) in the event the second refund claim

Lester M. Ponder, Indianapolis, Ind., attorney of record, for plaintiff. Louis A. Highmark and Barnes, Hickam, Pantzer & Boyd, Indianapolis, Ind., of counsel.

Gilbert W. Rubloff, Washington, D. C., with whom was Asst. Atty. Gen. Mitchell Rogovin, for defendant. Lyle M. Turner and Philip R. Miller, Washington, D. C., of counsel.

* The opinion, findings of fact and recommended conclusion of law are submitted under the order of reference and the general order of the court issued September 23, 1964.

was timely filed, whether in computing plaintiff's excess profits credit for the year 1953, the Commissioner of Internal Revenue was correct in reducing the plaintiff's equity capital as of January 1, 1953 by the amount of post-1953 net renegotiation refunds made by the plaintiff to the government for excessive profits realized in 1951 and 1952.

The facts, virtually all of which have been stipulated, are as follows: Plaintiff, an Indiana corporation, filed its income and excess profits tax return for the taxable year ended December 31, 1953 with the District Director of Internal Revenue at Indianapolis and paid tax as reported thereon in the amount of $1,639,083.66, of which $404,316.37 represented excess profits tax.

During the years 1951, 1952 and 1953, plaintiff manufactured articles which were subject to renegotiation and price redetermination under the Renegotiation Act of 1951 (50 App.U.S.C. § 1211 et seq. (1952 ed.)). In August 1953 plaintiff executed agreements with the government wherein it was determined that profits aggregating $39,594.24 derived by plaintiff during the year 1953 from contracts and subcontracts subject to the Renegotiation Act of 1951 should be repaid to the government, and such amount was refunded in payments in April 1954 and February 1955. Plaintiff did not, however, reduce the refund by any credit which might have been allowable pursuant to section 3806(b) of the Internal Revenue Code of 1939, as amended (26 U.S.C. § 3806(b) (1952 ed.)).[1] At a later date plaintiff's profits for the years 1951 and 1952 derived from contracts subject to the Renegotiation Act of 1951 were also renegotiated. Thus, in June 1954, plaintiff and the government agreed that $900,000 of its 1951 profits

should be eliminated and repaid to the government, subject to a tax credit of $612,000 under section 3806(b), and in August 1954 plaintiff made refund of $288,000, the net amount due. Further, in October 1956, plaintiff and the government agreed that $1,250,000 of its 1952 profits should be eliminated and repaid to the government, subject to a tax credit under section 3806(b) of $875,000. The net amount of $375,000 was repaid in two equal installments in May 1957 and February 1958. In all, plaintiff repaid a total of $663,000 excessive profits for 1951 and 1952 after giving effect to the allowable tax credit.

In 1956 a revenue agent in the office of the District Director of Internal Revenue at Indianapolis made an examination of plaintiff's 1953 income and excess profits tax return. His report of examination dated January 18, 1957 was approved by the District Director and made several adjustments in reported income, one of which was to reduce plaintiff's 1953 taxable income by $39,594.24 (the amount repaid in 1954 and 1955 to the government as excessive profits for the year 1953). In addition, in computing plaintiff's excess profits tax for 1953, the agent's report treated plaintiff's net renegotiation repayments of $288,000 and $375,000 for the years 1951 and 1952, respectively, as reductions of accumulated earnings and profits as of January 1, 1953 and, thereby, as reductions of equity capital at that date, thus reducing plaintiff's excess profits credit and increasing its excess profits tax liability.

The computation of income and excess profits tax for 1953 in the agent's report resulted in an overassessment of $1,-355.12 which was arrived at as follows: Without taking into account any other adjustments to taxable income, plaintiff

---

1. This section of the Code deals "with the tax effect of elimination of 'excessive profits' through renegotiation of war contracts. Where such excessive profits, after having been received or accrued in an earlier year, are repaid by the taxpayer * * * the statute provides generally that the repayment * * * reduces the receipt or accrual in the earlier year, rather than constituting a deduction for the year in which the repayment * * * was paid * * *. There is credited against such excessive profits the amount by which the tax for the prior taxable year is decreased because of the eliminated profits." 7A Mertens Law of Federal Income Taxation (Rev. ed.) § 42.01, fn. 18.

would have been entitled to a refund for the year 1953 in the amount of $31,279.34 in excess profits tax by virtue of its renegotiation payment for the year 1953 in the amount of $39,594.24. Without taking into account such potential refund of $31,279.34, plaintiff would have had a deficiency in income tax in the amount of $29,924.22 for the taxable year 1953 as a result of other adjustments. The potential refund of $31,279.34 was then applied against the potential deficiency of $29,924.22, resulting in the overassessment of $1,355.12 for 1953. On February 18, 1957, plaintiff executed Treasury Form 870 accepting the overassessment, which was thereafter scheduled for credit and refund by the Director on May 6, 1957.

In making refund to plaintiff of the $1,355.12 overassessment for 1953, the District Director concluded that but for the exclusion from income of the excessive profits it had earned in 1953 in the amount of $39,594.24 from government contracts, there would have been a deficiency in the amount of $29,594.24. Adopting that position and relying on section 3771(b) of the 1939 Code, the District Director determined that since plaintiff had the use of this $29,594.24 from the date its return was due (March 15, 1954) until the respective dates of repayment of the excessive profits (April 28, 1954 and February 18, 1955), it should pay interest on that amount up to such dates of repayment. The interest thus computed was fixed at $698.32. The District Director computed interest due plaintiff on the entire amount of its overassessment ($1,355.12), but before any refund was made, he deducted therefrom interest in the amount of $698.32. The resulting amount ($656.80) was credited to the balance shown due in plaintiff's account by virtue of the District Director's application of the restricted interest provision, section 3771. Plaintiff, therefore, received a refund check on or about May 6, 1957, in the total amount

of $834.08, which was composed of $656.80 in tax and $177.28 in interest.

In the meantime, on February 21, 1957, the District Director executed Treasury Form 872, which plaintiff had executed on February 18, 1957, extending the period of limitations for the assessment of additional tax for 1953 to June 30, 1957.

On December 5, 1957, plaintiff filed a refund claim for the year 1953 with the District Director at Indianapolis on the ground that its reported income should be reduced by $10,377.12 because of a price adjustment with another company, which was not reflected in either the 1953 return or in the revenue agent's report of January 18, 1957. The Director caused an examination to be made of this refund claim, and by letter dated June 28, 1958, transmitted to plaintiff a copy of the examining officer's report of examination dated January 15, 1958. The report approved the reduction of $10,377.12 and also increased gross income by the disallowance of the amount of $2,602.64 of repairs which should have been capitalized, resulting in an overassessment of $6,381.16. The overassessment, however, was never scheduled since the District Director ultimately concluded that this claim was not timely filed. Apart from this, the validity of the claim, subject to a stipulated offset of $2,602.64, is undisputed.

On April 15, 1959, plaintiff filed a second claim for refund for the year 1953 with the District Director at Indianapolis. The ground set forth therein was the reduction of equity capital in the total amount of $663,000 as of January 1, 1953, as a result of the net renegotiation repayments for the years 1951 and 1952. This claim was also denied by the District Director as not timely filed.

*Timeliness of December 5, 1957 Claim*

■ With respect to this claim, the earliest possible date for expiration of the period of limitations for filing a refund claim by plaintiff for 1953 was March 15, 1957.[2] On February 18, 1957, plain-

2. Section 322(b) (1) of the 1939 Code provides a limitation period for filing a claim for refund of three years from the time the return was filed, or two years from the time the tax was paid, whichever is later. See infra.

tiff executed Form 872 extending the period of limitations for assessment of additional taxes for the year 1953 to June 30, 1957, and on February 21, 1957 the District Director executed this Form. Thus, the effective date extending the limitation period for 1953 was February 21, 1957—and this date was almost a month prior to March 15, 1957, which was the earliest possible expiration date had such extension not been executed by both parties. Section 322(b)(3) of the 1939 Code, as amended, 26 U.S.C. § 322 (b)(3) (1952 ed.) provides that if the Commissioner and the taxpayer have within the period prescribed by section 322(b)(1) agreed to extend the period of limitations for the assessment of additional taxes, the taxpayer shall have an additional six months from the expiration date set forth in such agreement to file a refund claim for the year covered thereby. Accordingly, plaintiff had until December 31, 1957 (six months after June 30, 1957, the expiration date specified in Form 872) to file a timely refund claim—and defendant so concedes. Since the claim for refund was filed before expiration of the limitations period and since its validity, subject to the stipulated offset of $2,602.64, is not in dispute, plaintiff is entitled to judgment thereon in an amount to be computed under rule 47(c).

### Timeliness of April 15, 1959 Claim

Section 3772(a)(1) of the Internal Revenue Code of 1939 provides that no tax refund suit may be maintained until a claim for refund has been duly filed with the Commissioner of Internal Revenue. Section 322(b)(1) provides in part:

*Period of limitation.*—Unless a claim for credit or refund is filed by the taxpayer within three years from the time the return was filed by the taxpayer or within two years from the time the tax was paid, no credit or refund shall be allowed or made after the expiration of whichever of such periods expires the later. * * *

More than three years having elapsed between the filing of the return and the filing of this refund claim, the question is whether the claim was filed within two years from the time the tax was paid. This depends in turn on whether or not the application of plaintiff's potential refund of $31,279.34 for 1953 excess profits tax against its potential income tax deficiency of $29,924.22 for that year, resulting in an overassessment of $1,355.22 that was accepted by plaintiff and scheduled by the District Director on May 6, 1957, constituted payment of the potential deficiency in the statutory sense. Pertinent are sections 3770(a)(4) and 3772(e) of the 1939 Code, as amended (26 U.S.C. (1952 ed.)). Section 3770(a)(4) provides:

*Credit of overpayment of one class of tax against another class of tax due.*—Notwithstanding any provision of law to the contrary, the Commissioner may, in his discretion, in lieu of refunding an overpayment of tax imposed by any provision of this title, credit such overpayment against any tax due from the taxpayer under any other provision of this title.

Section 3772(e) provides:

*Credit Treated as Payment.*—The credit of an overpayment of any tax in satisfaction of any tax liability shall, for the purpose of any suit for refund of such tax liability so satisfied, be deemed to be a payment in respect of such tax liability to the collector in office at the time such credit is allowed.[3]

---

3. Sections 3770(a)(4) and 3772(e) were added to the 1939 Code by sections 9(a) and (b), respectively, of the Act of August 27, 1949, 63 Stat. 666. The Senate Finance Committee explained the provisions as follows (S.Rept. No. 685, 81st Cong., 1st Sess., pp. 4–5, U.S.Code Congressional Service 1949. p. 1876): "This section [9(a)] would add to the Internal Revenue Code a provision authorizing the Commissioner of Internal Revenue to credit the overpayment of one class of tax against taxes of other classes then due. Such crediting is not now possible under the code. By recognizing the over-all liability of taxpayers, the amend-

Plaintiff's position is that it was entitled to a refund for 1953 excess profits and owed a deficiency for 1953 income tax; that the offsetting of the former against the latter constituted a "credit of an overpayment of [a] tax in satisfaction of [a] tax liability" within the meaning of section 3772(e); and that it, therefore, made a payment of tax for the taxable year 1953 on May 6, 1957, the date when the District Director scheduled the overassessment,[4] so that the claim for refund filed on April 15, 1959, was timely as being within the two-year period. Defendant's position, on the other hand, is that the offsetting of various items on a single tax return does not constitute a payment of tax in the statutory sense. It contends that neither a refund of $31,279.34 nor a deficiency of $29,924.22 ever materialized, and had they, the abatement of the latter by the former still would not have been a tax payment under the statute since it would have applied to the same tax liability.

It will be noted at the outset that the Korean excess profits tax (which is here involved) was not a separate tax from the income tax but was simply "an additional tax over and above the other corporate income taxes." S.Rept. No. 2679, 81st Cong., 2d Sess., pp. 4–5, 1951–1 C.B. 240, 242–43. Under the various provisions of the 1939 Code, normal tax and surtax were imposed on all income subject to income tax, and, to the extent that income exceeded specified amounts, it also became subject to the excess profits tax at a rate of 30 per cent. The excess profits tax thus brought the tax rate on affected corporate income to 82 per cent, consisting of a normal tax of 30 per cent (beginning in 1951), a surtax of 22 per cent, and the excess profits tax of 30 per cent. 7A Mertens, op. cit. supra, § 42.28.[5]

Considering that the excess profits tax and the income tax involved the same tax liability, plaintiff did not receive (nor did it become entitled to) a tax "refund" or "credit" in the amount of $31,279.34 as the result of its renegotiation repayment to the government for the excessive profits it realized in 1953. For a taxpayer is only entitled to a credit (or refund) for the *excess* of his recomputed and adjusted tax liability for that year. See Lewis v. Reynolds, 284 U.S. 281, 283, 52 S.Ct. 145, 76 L.Ed. 293 (1932). Nor was a "deficiency" assessed against or collected from the plaintiff for 1953.[6] Instead, offsetting adjustments were made by applying a potential refund against a potential deficiency with the result that plaintiff made no additional payment for 1953 tax on May 6, 1957, but rather received a small refund for that tax year. In these circumstances,

---

ment will facilitate the collection of taxes and expedite the adjustment of cases involving overpayments and underpayments of tax. This section [9(b)] would also amend section 3772 to provide that the credit of an overpayment of any tax shall for the purpose of any suit for refund be deemed to be a payment of tax to the collector in office at the time the credit is allowed." As further explained on the Senate floor, under section 3770(a) (4) the Commissioner may thus credit an overpayment in income tax for a given year against a deficiency in excise tax due for such year, or vice versa. See 95 Cong.Rec. 11036 (1949).

4. Under section 3770(a) (2) of the 1939 Code, the date on which the District Director first signs a schedule of overassessment in respect of a tax shall be considered the date of allowance of refund or credit in respect of such tax.

5. By contrast, the World War II excess profits tax and income tax were separate taxes for tax administration purposes. See e. g. W. G. Duncan Coal Co. v. Glenn, 120 F.Supp. 948 (W.D.Ky.1952); Babcock & Wilcox Co. v. Pedrick, 212 F.2d 645 (2d Cir. 1954), cert. denied 348 U.S. 936, 75 S.Ct. 355, 99 L.Ed. 733 (1955); Standard Oil Co. v. United States, 175 F.Supp. 670 (N.D.Ohio, 1959). See also 7A Mertens, Id.

6. Under section 271(a) of the 1939 Code, as amended, 26 U.S.C. § 271(a) (1952 ed.), a "deficiency" is defined as the amount by which the tax imposed by chapter 1 (which covers both income and excess profits tax) exceeds the excess of the amount shown on the return as filed and any other amount previously assessed or collected.

plaintiff's argument must necessarily come down to this: That in an audit of an income (and excess profits) tax return for a single year, each adjustment which increases income (or decreases a credit against income) results in a "deficiency", while each adjustment which decreases income (or increases a credit) results in an "overassessment", and that any offset of the former against the latter constitutes a "payment" of tax even though the net effect of all the adjustments taken together culminates in but a single overpayment or deficiency, as the case may be. The difficulty with this argument is that the audit of a taxpayer's single income and excess profits tax return for a particular year is not composed of a separate deficiency or overassessment as regards each adjustment, but necessarily results in either a deficiency or an overassessment. See Lewis v. Reynolds, supra; Dysart v. United States, 169 Ct.Cl. 276, 283, 340 F.2d 624, 628 (1965). The principle of credit allowances, therefore, "applies after the offsetting amounts are ascertained and not to their ascertainment." Babcock & Wilcox Co. v. Pedrick, supra, 212 F.2d at 648. The principle thus applies only as between different kinds of tax for a single tax year or against taxes of different years (ibid), so that a tax is deemed to be paid if a cash credit of the taxpayer is charged against a determined assessment or if an overpayment of one year is credited against a deficiency of another year. See Rosenman v. United States, 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535 (1945); McEachern v. Rose, 302 U.S. 56, 58 S.Ct. 84, 82 L.Ed. 46 (1937); United States v. Swift & Co., 282 U.S. 468, 51 S.Ct. 202, 75 L.Ed. 464 (1931). See also section 322(a) (1) of the 1939 Code. In sum, the principle has no application to the present situation which involves not the offsetting of an overassessment against an existing deficiency, but the offsetting of an upward adjustment against a downward adjustment to a single tax liability (income and excess profits) for a single tax year (1953). Such an offsetting of adjustments does not, it would seem clear, constitute a "credit" or "payment" within the meaning of section 3772(e) or section 3770(a) (4).

Plaintiff argues, however, that the doctrine of Manning v. Seeley Tube & Box Co., 338 U.S. 561, 70 S.Ct. 386, 94 L.Ed. 346 (1950), is controlling here. In that case, the taxpayer-corporation filed its 1941 return and timely paid the amount of the tax shown thereon, and the Commissioner later assessed a deficiency with interest from the date the tax was properly due to the assessment date. Subsequently, the corporation became entitled to an operating loss carryback from a later taxable year which was sufficient to abate completely the corporation's tax liability for 1941. On a claim for refund, the Commissioner abated the deficiency, but refused to refund the interest assessed thereon. The Court held that such interest was properly assessed and collected on the ground that Congress intended the government to have the use of the money lawfully due when it became due and that until the deficiency was assessed, the taxpayer had the use of funds which rightfully should have been in the possession of the government.[7] Plaintiff points out that this determination that the corporation was not relieved of its obligation to pay interest on the deficiency was a determination that the deficiency was not paid until the refund was credited against the deficiency since, under the rule in Rosenman v. United States, supra, 323 U.S. at 662–663, 65 S.Ct. 536, the same transaction cannot be treated as payment for interest purposes and not as payment for limitation purposes. Plaintiff then observes that here, as in Seeley, interest

---

7. The same result has been reached where the taxpayer became entitled to the refund before assessment of the deficiency. Cumberland Portland Cement Co. v. United States, 101 F.Supp. 577 (M.D.Tenn. 1952), aff'd per curiam 202 F.2d 152 (6th Cir. 1953). See also United States v. Koppers Co., 348 U.S. 254, 75 S.Ct. 268, 99 L.Ed. 302 (1955).

was assessed by the District Director on the "deficiency" of $29,924.22 and contends that such "deficiency" was not paid until the "refund" was credited against it on May 6, 1957, when the overassessment was scheduled. But this analogy to Seeley, while ingenious, is not directly in point. For here interest on the "deficiency" did not continue to run to May 6, 1957 when the overassessment was scheduled; rather, interest was computed only until April 28, 1954 and February 18, 1955—the dates when plaintiff repaid its 1953 excessive profits to the government. In short, payment of the "deficiency" for purpose of computing interest was not delayed until the offset took place in May 1957, but instead was made no later than February 18, 1955—more than four years before the refund claim was filed.

■■ Plaintiff further indicates that if, instead of repaying to the government the full amount of the excessive profits realized in 1953, it had then chosen to take the section 3806(b) tax credit, it would have had on May 6, 1957 not an overassessment but a tax deficiency which it would have been obliged to pay, thus making the refund claim filed in April 1959 timely. Under such circumstances, plaintiff says that equitable considerations should govern the timeliness of its refund claim and that such considerations require that it should not be penalized for having followed the alternative procedure of allowing the government to offset the items increasing and decreasing its tax liability. However, general principles of equity may not override statutory requirements for timely filing of tax refund claims. See e. g., Young v. United States, 203 F.2d 686, 689 (8th Cir. 1953); Aplington v. United States, 169 F.Supp. 815, 144 Ct.Cl.

683, 685 (1959), cert. denied, 361 U.S. 821, 80 S.Ct. 69, 4 L.Ed.2d 67; First National Bank of Montgomery v. United States, 280 F.2d 818, 821, 150 Ct.Cl. 798, 804 (1960). See also Brainard Steel Corp. v. United States, 146 F.Supp. 461, 466, 137 Ct.Cl. 114, 122 (1956). And even were the rule otherwise, there seems little merit to the equitable considerations on which plaintiff relies. For one thing, a necessary premise of plaintiff's argument is that at the time it repaid the 1953 excessive profits it was aware that it had an additional tax liability. But this premise is not supported by the record; to the contrary, the inference from the record is that at the time plaintiff repaid the 1953 excessive profits in 1954 and 1955, it had no indication and did not anticipate that the government would assert any additional tax liability for 1953—as it did in early 1957. Moreover, any taxpayer confronted by offsetting adjustments could make precisely the same argument as plaintiff. Thus, the taxpayer could argue—when faced with the limitations barrier—that he knew he had overpaid his tax, but rather than burden the government with an immediate claim for refund, he would wait and see what the government might come up with on audit. Such an argument would, of course, have no validity for the statutory period of limitations may not be extended through action of a taxpayer's own choosing. Wrightsman Petroleum Co. v. United States, 35 F.Supp. 86, 92 Ct.Cl. 217 (1940), cert. denied 313 U.S. 578, 61 S.Ct. 1095, 93 Ct.Cl. 777 (1941); McCallum v. United States, 26 F.Supp. 1014, 88 Ct.Cl. 606 (1939).

In summary, it is concluded that plaintiff's refund claim filed on April 15, 1959 was not timely. In view of this conclusion, it is unnecessary to consider the claim on its merits.