991 F.2d 811
 NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
MOBIL OIL CORPORATION, Plaintiff-Appellee,
v.
The UNITED STATES, Defendant-Appellant.
 No. 92-5076.
 United States Court of Appeals, Federal Circuit.
 March 18, 1993.
Rehearing Denied; Suggestion for Rehearing In Banc
Declined April 26, 1993.
 
 Before MICHEL, Circuit Judge, COWEN, Senior Circuit Judge, and RADER, Circuit Judge.
 MICHEL, Circuit Judge.
 
 DECISION
 
 1
 The United States appeals from the November 22, 1991 judgment of the United States Claims Court,[1] No. 358-78, entitling plaintiff, Mobil Oil Corporation (Mobil), to a tax refund in the amount of $2,253,570.52 plus interest, for the 1964 tax year. We hold that the Claims Court erred as a matter of law in concluding that the offset allowed by the Internal Revenue Service (IRS) was a payment of tax for purposes of 26 U.S.C. § 6511(a) (1954). Therefore, because Mobil's formal refund claim was barred by the statute of limitations in section 6511,[2] and because the Claims Court's finding that Mobil did not make an informal refund claim within the allowable time was not clearly erroneous, we reverse.
 
 DISCUSSION
 I. Background
 
 2
 This dispute arises from Mobil's application to IRS for a refund of overpayment of income taxes for the 1964 tax year. After its refund claim was denied as untimely by IRS, Mobil filed suit seeking recovery of the alleged overpayment in the Claims Court which granted judgment for Mobil. The government asserts that the Claims Court erred as a matter of law in determining that an agreed administrative offset against additional United States income tax constituted a "payment" of tax for purposes of section 6511(a), and therefore that the application for refund was timely filed. Absent timely filing of the refund claim with IRS, the Claims Court would lack jurisdiction over the action. § 7422(a).[3] Therefore, rather than entering judgment for Mobil, the court should have dismissed the claim for refund for lack of jurisdiction.
 
 
 3
 In an IRS audit, Mobil was assessed additional income tax for the 1964 tax year resulting from a section 482 reallocation of income from certain of Mobil's related foreign entities to Mobil's United States sourced income. An offset against the additional tax liability resulting from the reallocated income was allowed, however, pursuant to the provisions of Rev.Proc. 64-54, 1964-2 C.B. 1008, in order to avoid double taxation. The offset was memorialized in two "closing agreements" between Mobil and the IRS. The first closing agreement, on December 18, 1968, reciting the terms of the reallocation, allowed an offset against additional U.S. income taxes due to the reallocation in the amount of foreign taxes already paid by certain Mobil subsidiaries or affiliates on the income that was later the subject of the section 482 reallocation. The second closing agreement, on October 5, 1973, established the amount of the offset at $7,522,010.
 
 
 4
 Mobil filed a formal, written refund claim with IRS for $3,854,159.06 in overpayment of income tax for the 1964 tax year, on March 18, 1975. The IRS denied the claim as untimely. Normally, under section 6511(a), to be timely, a refund claim must be filed within three years from the time the return was filed or two years from the time the tax was paid, whichever is later. Refund claims filed more than three years after the filing of the initial tax return, but within two years of a payment of tax, are limited by section 6511(b)(2)(B) to the amount of tax paid during the two years immediately preceding the filing of the refund claim. In this case, because the time for assessments with respect to the 1964 tax year was extended to July 31, 1974 by agreement between Mobil and the IRS, the time for filing a refund claim under section 6511(a) was extended by section 6511(c)(1) to within six months of that date, or January 31, 1975. However, a refund claim filed after the statutory time limit established by section 6511(c)(1) is still considered timely, under section 6511(a), if it is filed within two years of payment of the tax.
 
 
 5
 Mobil contended that its formal refund claim, filed on March 18, 1975, was timely under section 6511(a) because it was filed within two years of the offset allowed in the October 5, 1973 closing agreement. Mobil argues that the offset was a "payment" of tax for purposes of sections 6511(a) and (b)(2)(B). Therefore, according to Mobil, payment was made within the two years preceding the refund request--in compliance with section 6511(a), the amount of which (over $7 million) exceeds the total amount of the refund requested (over $3 million)--in compliance with section 6511(b)(2)(B). The government argues that the offset was not a payment and therefore Mobil's action is barred by the two year statute of limitations pursuant to section 6511(a).
 
 
 6
 Alternatively, Mobil argues that it made an informal claim for refund prior to January 31, 1975. The government responds by arguing that Mobil did not make an adequate informal claim because it never made an actual request for a refund requiring determination by the IRS.
 
 
 7
 The parties have stipulated that if the government does not prevail on either of its statute of limitations defenses, Mobil is entitled to a refund of $2,253,570.52[4] plus applicable interest.
 
 
 8
 The Claims Court held that the offset was a payment because "[t]he effect of the closing agreement of October 5, 1973, in full accordance with Rev.Proc. 64-54, 1964-2 C.B. 1008-10, was to convert the tax payments Mobil made to foreign governments on the reallocated income into a tax payment on this income for Mobil's 1964 federal income tax." Mobil Oil Co. v. United States, No. 358-78, slip op. at 11-12 (Cl.Ct. Nov. 22, 1991) (emphasis added). To support this "conversion theory," the court reasoned that the IRS had an ownership interest in the offset, which was explicitly provided for in the first closing agreement, because of another clause therein requiring that any refunds actually obtained by Mobil from foreign governments as a result of the section 482 reallocations be paid to the IRS as additional taxes owed by Mobil. Id. at 12. The Claims Court, therefore, determined that because Mobil's formal claim for refund was filed within two years of this deemed payment, i.e., the offset, it was timely under section 6511, and also that it did not exceed the cap.
 
 
 9
 The Claims Court further found that Mobil did not make an informal refund claim within the allowable time pursuant to section 6511(c)(1), i.e., by January 31, 1975. This finding was based on a determination that the documents and surrounding factual circumstances relied on by Mobil did not assert an entitlement for a refund requiring a determination from the IRS. Therefore, the Claims Court found that the IRS was never put on notice that a refund claim was being made within the allowable time as required by the statute of limitations in section 6511(a) and (c).
 
 II. The Offset and the Formal Claim
 
 10
 The determination of whether the administrative offset may be considered a payment for purposes of section 6511 is a legal question which we review de novo. See Whitney Benefits, Inc. v. United States, 926 F.2d 1169, 1171 (Fed.Cir.), cert. denied, 112 S.Ct. 406 (1991); Heisig v. United States, 719 F.2d 1153, 1158 (Fed.Cir.1983).
 
 A.
 
 11
 The government correctly argues that such an offset is merely an intermediate adjustment step used to calculate Mobil's ultimate tax liability for the year and is not a "payment" of tax for purposes of section 6511. The government relies on Kingston Prods. Corp. v. United States, 368 F.2d 281 (Ct.Cl.1966), and Republic Petroleum Corp. v. United States, 613 F.2d 518 (5th Cir.1980).
 
 
 12
 In Kingston Prods., IRS determined that the taxpayer had overpaid its excess profits tax for the year, and applied that overpayment as an offset against a deficiency in the taxpayer's income tax for the same year. 368 F.2d at 283-84. The taxpayer then filed a refund claim, within two years of the date of the offset but more than three years after the filing of its tax return, contending that the offset constituted a payment of tax. Id. at 286. The court noted that the excess profits tax was an addition to, and was part of the federal income tax, so that the offset was merely a downward adjustment in the process of computing the taxpayer's tax liability, i.e., was only an intermediate step in arriving at the taxpayer's ultimate tax liability for the year in question. Id. at 286. Therefore, the court held that the offset did not constitute a "payment" of tax by the taxpayer for statute of limitation purposes under the predecessor to section 6511(a).[5] Id. at 287. Kingston Prods. is binding precedent. South Corp. v. United States, 690 F.2d 1368, 1370-71 (Fed.Cir.1982).
 
 
 13
 Similarly, in Republican Petroleum, IRS first disallowed certain disputed deductions and losses claimed by the taxpayer, resulting in deficiencies for the years 1960 and 1962. 613 F.2d at 521. But IRS also determined that the taxpayer overstated its income for 1960 and 1962, resulting in overpayments of income tax for those years. Id. at 521-22. IRS then applied the respective overpayments as offsets against the respective deficiency assessments for those years. Id. The taxpayer filed two refund claims for the years 1960 and 1962, both of which were filed more than three years after the respective returns were filed, but within two years of the offsets. Id. at 525. The district court allowed the refunds, reasoning that the offsets were payments of tax within the meaning of section 6511(a). Id. The Fifth Circuit reversed, expressing its agreement with Kingston Prods., and holding that "the offsetting of adjustments for a single tax year ... by the IRS in the instant case does not constitute payment of tax for purposes of [section] 6511(a)." Id. Although a decision of a sister circuit is only persuasive authority, not binding precedent, we give it weight in accordance with the soundness of its reasoning. Here it deserves considerable weight.
 
 
 14
 The offset in the present case is virtually identical to the offsets in Kingston Prods. and Republican Petroleum. It causes a reduction in the taxpayer's income tax liability by making a downward adjustment of the additional tax liability due to the section 482 reallocation. That it did so in order to avoid double taxation is irrelevant. Whether an offset can be a payment depends on how it operates in calculating tax liability, not why it was allowed.
 
 
 15
 Mobil argues that the offset is not merely an intermediate adjustment toward ultimate tax liability because the offset arose from payments of tax to several foreign governments, which are clearly separate taxing authorities. Therefore, according to Mobil, Kingston Prods. and Republican Petroleum do not apply because they involve offsetting adjustments with respect to a single tax due to a single taxing authority, whereas in the present case, the adjustments involve separate taxes due to separate taxing authorities. This analysis is faulty because it confuses the nature of the offset with the underlying policy reason for its allowance, i.e., avoiding double taxation in view of the foreign taxes already paid. The offset in this case is clearly an administrative credit against an increase in income tax that otherwise would have been assessable against the taxpayer as a result of the section 482 reallocation. This offset results in a reduction of a single tax liability--Mobil's 1964 corporate income tax, respecting a single taxing authority--IRS. It results from an administrative remedy pursuant to Rev.Proc. 64-54 that is designed to reduce income tax liability. Accordingly, the offset operates like any other intermediate downward adjustment. Therefore, Kingston Prods. and Republic Petroleum apply.
 
 
 16
 Additionally, Mobil argues that the offset cannot be considered as merely an adjustment of its income tax liability because Mobil's additional tax liability due to the section 482 reallocation was determined separately from the amount of the offset. Although the two amounts were determined separately, they are still components of the same overall calculation of net income tax liability. The fact that Mobil's tax liability would be increased accordingly if at a later date Mobil obtained a refund of the taxes paid on the reallocated income from the foreign governments only further suggests that the true nature of the offset in the first instance--an adjustment in calculating net income tax.
 
 
 17
 The government additionally argues that for an offset to be considered a payment the government would have to receive some economic benefit from the offset. In this case, where the offset is allowed as a matter of administrative grace to relieve the taxpayer from double taxation, the government has not received any economic benefit. Indeed, the government has foregone an economic benefit it would be entitled to, but for this forebearing policy. In illustration of this point, the government notes that considering the offset a payment would lead to the absurd result that the government would be required to "refund" monies that it never received.
 
 B.
 
 18
 The Claims Court's theory that the closing agreements converted the offset into a payment of tax for purposes of section 6511 is also erroneous because it imputes contractual powers to the closing agreements beyond those permitted by the applicable statutory provisions and regulations. The closing agreements in this case merely implement Rev.Proc. 64-54.[6] Rev.Proc. 64-54, in turn, merely implements section 482 by allowing, as a matter of administrative grace, relief from double taxation resulting from a reallocation of income. Section 482 relates only to a reallocation of income from one entity to another related entity, which is an intermediate upward or downward adjustment in income made for purposes of determining the ultimate tax liability of that taxable entity. Reallocation of income, by definition, is not a payment of tax. Similarly, the resulting offset provided for by Rev.Proc. 64-54 cannot be a payment, but is only an intermediate adjustment.
 
 
 19
 The closing agreements do not purport to, nor could they, modify the statutory provisions applicable here.[7] Had they sought to, they would have been void as ultra vires. The IRS as a contracting party had no authority to alter the statutory meaning of "payment," especially under the circumscribed circumstances here where the Revenue Procedure specifically speaks of "offsets," not "payments."
 
 
 20
 Significantly, the Claims Court does not cite any authority that directly supports its conversion theory. Nor does the Claims Court cite case law for the proposition of IRS having authority to contractually agree with one taxpayer on a definition of "payment" different from that derived from the statute and applicable to all other taxpayers.
 
 
 21
 Furthermore, the Claims Court's reliance on the refund provision in the first closing agreement to show that the government had an ownership interest in potential foreign refunds is misplaced. This clause does not create an ownership interest. Like the other clauses, this clause merely implements the specific provisions in Rev.Proc. 64-54, § 3(b). Every closing agreement entered into pursuant to this revenue procedure must and does contain this repayment clause; otherwise the government would be precluded from later increasing the tax liability to avoid a windfall to a taxpayer who, after allowance of an offset, receives a refund of foreign taxes paid on reallocated income. Once again, this clause, rather than supporting the Claims Court's conversion theory, merely illustrates that the offset is an intermediate adjustment step in calculating the ultimate tax liability.
 
 
 22
 Even assuming, arguendo, that the refund provision of the closing agreement gave IRS an ownership interest in any future refund of foreign tax payments to Mobil, there is no basis to assume that this would create an ownership interest in the amount of the offset itself. The offset arises from a separate provision of the closing agreement. That provision does not create an ownership interest in the amount of the offset as a potential economic benefit that is to be received or receivable by IRS. Instead, it specifies that any claim by IRS to the amount of the offset is to be given up as a matter of administrative grace.
 
 
 23
 In view of the settled law with respect to intermediate adjustments of ultimate tax liability and the flaws in the Claims Court's interpretation of the closing agreements, we conclude that the Claims Court erred in determining that the offset was a payment for purposes of section 6511.
 
 III. The Informal Claim
 
 24
 Mobil's assertion that it made an adequate informal refund claim before January 31, 1975, presents an issue of fact. Furst v. United States, 678 F.2d 147, 151 (Ct.Cl.1982); Newton v. United States, 163 F.Supp. 614, 619 (Ct.Cl.1958). We review such factual determinations by the Claims Court under a clearly erroneous standard. Heisig, 719 F.2d at 1158; see also Anderson v. Bessemer City, 470 U.S. 564, 574 (1985) (review under clearly erroneous standard required for findings of fact "even when" based on "documentary evidence or inferences from other facts").
 
 
 25
 A valid informal refund claim requires a showing (1) that the Commissioner was on either actual or constructive notice that a right was being asserted with respect to an overpayment of tax for a certain year and (2) that there exists some sort of written component, whether created by the taxpayer or the IRS. Deluxe Check Printers, Inc. v. United States, 15 Cl.Ct. 175, 180 (1988), aff'd in part, rev'd in part on other grounds, 885 F.2d 848 (Fed.Cir.1989). Furthermore, the written component of an informal claim must be sufficient to "give the Commissioner adequate notice that a refund of tax is sought for certain years and of the basis for the claim." VDO-ARGO Instruments, Inc. v. United States, 3 Cl.Ct. 359, 362 (1983), aff'd, 738 F.2d 453 (Fed.Cir.1984) (Table).
 
 
 26
 The Claims Court's finding that Mobil did not make an informal claim is supported by the record. None of the documentary evidence relied on by Mobil shows that Mobil was making a present assertion of entitlement to a refund which would constitute a "claim" requiring final determination by the IRS. Arch Eng'g Co. v. United States, 783 F.2d 190, 192 (Fed.Cir.1986) (documents which are merely a normal part of the process and which do not apprise the IRS that taxpayer is presently seeking a refund do not constitute an informal refund request). Mobil also relies on an oral assertion made at the February 1, 1974 meeting with personnel from the Dallas district office of the IRS, which is insufficient to constitute an informal claim as a matter of law. Disabled American Veterans v. United States, 650 F.2d 1178, 1179-80 (Ct.Cl.1981). Therefore, we conclude that the Claims Court's finding that no informal claim was made was not clearly erroneous.
 
 IV. Other Issues
 
 27
 We have considered Mobil's other arguments and find them unpersuasive.
 
 
 28
 In light of our holding, the government's assertion that the Claims Court abused its discretion in denying its post judgment motion to amend its answer to raise an interest offset issue is moot. Therefore, we need not and do not address it here.
 
 V. Conclusion
 
 29
 Lacking jurisdiction pursuant to section 7422(a), because no claim was timely filed with IRS, the Claims Court should have dismissed Mobil's complaint. Therefore, the judgment in Mobil's favor is reversed.
 
 
 
 [1]
 As of October 29, 1992, the United States Claims Court became the "United States Court of Federal Claims," pursuant to the Court of Federal Claims Technical and Procedural Improvements Act of 1992, Pub.L. No. 102-572, § 902, 106 Stat. 4516 (1992)
 
 
 [2]
 All section references herein are to the Internal Revenue Code of 1954, Title 26 U.S.C., unless otherwise specified
 
 
 [3]
 Section 7422(a) provides in relevant part:
 No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, ... or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.
 26 U.S.C. § 7422(a) (1976).
 
 
 [4]
 The parties reached a partial settlement agreement before trial whereby the IRS agreed to refund to Mobil a portion of the claim representing an amount of tax that was paid, separate from the offset in issue, within the two years immediately preceding the filing of the claim for refund. This agreement accounts for the reduction of Mobil's claim from the original $3.9 million to $2.3 million
 
 
 [5]
 At the time that this case was decided, the relevant statute of limitations provision was set forth in section 322(b)(1) which provided in relevant part:
 Period of limitation.--Unless a claim for credit or refund is filed by the taxpayer within three years from the time the return was filed by the taxpayer or within two years from the time the tax was paid, no credit or refund shall be allowed or made after the expiration of whichever of such periods expires the later.
 26 U.S.C. § 322(b)(1) (1939).
 
 
 [6]
 That provision, on its face, requires that it be implemented by means of a "closing agreement under section 7121 of the code." Rev.Proc. 64-54 § 3, 1964-2 C.B. at 1010. Section 7121 authorizes the Secretary to enter into a written closing agreement relating to a taxpayer's liability with respect to any internal revenue tax for any taxable period
 
 
 [7]
 It is well recognized that "[a]ny tax or deficiency determined under a closing agreement is assessed and collected, and any overpayment is credited or refunded, in accordance with the provisions of the Code applicable to those administrative actions." Michael I. Saltzman, IRS Practice and Procedure p 9.09 (2nd Ed.1991) (emphasis added); 26 C.F.R. § 301.7121-1(d)(2) (1992)